Robert V. KRUEGER, Jr., Plaintiff,

v.

Richard E. LYNG, et al., Defendants.

No. N 88–0175 C.

United States District Court,
E.D. Missouri, N.D.

March 22, 1990.

Mary Anne Sedey and Patricia L. Cohen, St. Louis, Mo., for plaintiff.

Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., for defendants.

## MEMORANDUM

GUNN, District Judge.

This matter is before the Court on defendants' motion for summary judgment.

Plaintiff Robert Krueger brings this action against eleven current and former officials of the United States Department of Agriculture. Krueger, who formerly served as the Audrain County Executive Director (CED) for the Agricultural Stabilization and Conservation Service (ASCS), alleges that defendants violated his rights under the first and fifth amendments to the Constitution by removing him from his position in retaliation for the exercise of his first amendment rights. In essence, Krueger asserts that during the course of his employment he discovered and reported to his superiors, elected officials and members of the press, evidence of abuse of the Department of Agriculture's farm price support programs, which indicated that thousands of dollars of public funds were being paid out illegally. In 1984 on the basis of Krueger's reports to his superiors, the Office of the Inspector General conducted an audit of the Audrain County ASCS. Krueger contends that the audit fully substantiated his allegations of abuse and that he was terminated shortly thereafter because he had insisted, over his superiors' objections, on bringing the past illegal operation of the program to the auditors' attention. The audit was officially closed on July 7, 1986.

Defendants assert that in November or December, 1986 Krueger's superior, Morris Westfall, State Executive Director for the ASCS, received complaints of unfair treatment from an employee under Krueger's supervision. The employee alleged, among other things, that Krueger was intimidating and dictatorial and had required her to work in a small room by herself as punishment. Following an investigation of these and other allegations Krueger was suspended. On January 28, 1987 Krueger appeared before the State ASCS Committee to respond to the charges in the suspension notice. On January 29, 1987 Krueger was terminated from his position. Pursuant to the procedures set forth in C.F.R. § 7.29–7.34, Krueger appealed his termination to the Deputy Administrator of the ASCS. Following a three-day hearing, the Deputy Administrator affirmed the termination decision. Pursuant to C.F.R. § 7.34,

the determination of the Deputy Administrator is final and not subject to further administrative review. Krueger then filed suit in this Court challenging his termination.

In support of their motion for summary judgment defendants raise two arguments. Defendants assert that they are entitled to qualified immunity because their conduct, when viewed objectively, did not transgress "clearly established constitutional rights." *Davis v. Scherer*, 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984). In addition, defendants assert that plaintiff's *Bivens* action to recover damages against federal officials is precluded in this instance by "special factors counseling hesitation in the absence of any affirmative action by Congress." *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 396, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971); *see, also Carlson v. Green*, 446 U.S. 14, 18, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980); *Davis v. Passman*, 442 U.S. 228, 245, 99 S.Ct. 2264, 2277, 60 L.Ed.2d 846 (1979).

With respect to defendants' argument that a damages action is precluded in this case, the Court notes that a *Bivens* action does not lie if Congress has provided an alternative remedy which it has explicitly declared to be a substitute for recovery directly under the Constitution. *See Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). In addition, a *Bivens* action for damages is precluded if special factors exist which counsel against the implication of a direct constitutional remedy. *Id.* In this case there exists no explicitly designated alternative remedy to a *Bivens* action, but defendants assert that special factors bar the implication of a direct constitutional remedy.

Recently, in *Schweiker v. Chilicky*, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), the Supreme Court expanded the "special factors" exception and "counselled the lower courts to 'respond[ ] cautiously to suggestions that *Bivens* remedies be extended into new contests.'" *McIntosh v. Turner*, 861 F.2d 524, 525 (8th Cir.1988) (quoting *Schweiker v. Chilicky*, 108 S.Ct.

at 2467). As interpreted by the Eighth Circuit, *Chilicky* creates a "presumption against judicial recognition of direct actions for violations of the Constitution by federal officials...." *McIntosh v. Turner*, 861 F.2d at 526. In arenas like federal employment which are subject to pervasive congressional regulation, courts are directed not to imply a right of action for constitutional violations unless Congress' failure to provide such a remedy "has ... been inadvertent." *Chilicky*, 108 S.Ct. at 2468; *see also McIntosh v. Turner*, 861 F.2d at 525.

Plaintiff contends that *Chilicky* should not be applied to preclude his *Bivens* action because there is no alternate remedial mechanism by which ASCS county office employees may obtain redress for constitutional violations. In support of this contention, plaintiff notes that ASCS county office employees are not protected by the elaborate remedial mechanisms of the Civil Service Reform Act (CSRA), 92 Stat. 1111, *et seq.* (codified as amended in various sections of Title 5, United States Code) (1982). Plaintiff asserts and defendants do not dispute that ASCS county office employees do not enjoy the protections of CSRA because they are not "employees" within the meaning of the CSRA, 5 U.S.C. § 2105(a). For purposes of the CSRA an "employee" is defined as an individual

(1) appointed in the civil service by one of the following acting in an official capacity—

(A) The President;

(B) a member or members of Congress, or the Congress;

(C) a member of a uniformed service;

(D) an individual who is an employee under this section;

(E) the head of a Government controlled corporation;

(F) an adjutant general designated by the Secretary concerned under section 709(c) of title 32;

(2) engaged in the performance of a Federal Function under authority of law or an Executive act; *and*

(3) subject to the supervision of an individual named in paragraph (1) of this subsection while engaged in the performance of the duties of his position.

All three conditions must be satisfied before an individual may be classified as an employee within the meaning of CSRA. *Horner v. Acosta*, 803 F.2d 687, 691 (Fed. Cir.1986). It is undisputed that plaintiff, who was appointed and served at the pleasure of the elected County Committee for Audrain County, was not "appointed in the civil service" as required by 5 U.S.C. § 2105(a)(1). Therefore, plaintiff may not avail himself of the CSRA remedies. In addition, the the fact that plaintiff is not an employee within the meaning of 5 U.S.C. § 2105(a) precludes him from collecting back pay under the Back Pay Act, *Hamlett v. United States*, 14 Cl.Ct. 62 (1988).

The Court must therefore determine whether the limited remedy available to plaintiff results from Congressional oversight or inadvertence. The remedy available to plaintiff, appeal to the ASCS Deputy Administrator for State and County Operations, was formulated by the Secretary of Agriculture, acting pursuant to authority delegated by Congress. Congress affirmatively delegated this task to the Secretary of Agriculture by empowering him to make "such regulations as are necessary" for the administration of ASCS programs. The Secretary of Agriculture has not employed this broad grant of authority to provide redress, other than an appeal to the Deputy Administrator, for constitutional wrongs. Nevertheless, the Court cannot conclude that this failure to act mandates the implication of a *Bivens* action. When Congress delegated the task of making regulations to govern the administration of ASCS programs, it could have specifically required the Secretary to develop a remedy for constitutional wrongs. Congress did not explicitly require the creation of such a remedy. Moreover, there is no indication that Congress intended to create such a remedy but inadvertently failed to do so.

Plaintiff's position is analogous to that of probationary civil service employees, who are not employees within the meaning of the Civil Service Reform Act, and therefore have only limited rights of appeal. In numerous cases courts have reasoned that

because these employees do not meet the definitional requirements of CSRA, Congress purposefully denied these employees a remedy for constitutional violations. *Swartz v. I.R.S.*, 884 F.2d 1128, 1130 (8th Cir.1989); *McIntosh v. Weinberger*, 810 F.2d 1411, 1417 (8th Cir.1987), *vacated sub nom., Turner v. McIntosh*, 487 U.S. 1212, 108 S.Ct. 2861, 101 L.Ed.2d 898, *on remand, McIntosh v. Turner*, 861 F.2d 524 (8th Cir.1988); *Maxey v. Kadrovach*, 696 F.Supp. 425, 432–433 (W.D.Ark.1988); *see also Moreno v. SBA*, 877 F.2d 715, 716 (8th Cir.1989); *Spagnola v. Mathis*, 859 F.2d 223, 229 (D.C.Cir.1988).

On the basis of the foregoing, the Court concludes that there is no evidence that Congress inadvertently failed to create further remedies for the wrong plaintiff alleges. Therefore, defendants' motion for summary judgment will be granted.

Having concluded that the implication of a *Bivens* claim would be improper here, the Court need not address the issue of immunity.